UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KNIGHT CAPITAL PARTNERS CORP.,

                Plaintiff,                    Case Number 16-12022

v.                                        Honorable David M. Lawson

HENKEL AG & COMPANY, KGaA,

                Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY, GRANTING IN PART AND DENYING IN PART MOTIONS BY DEFENDANT AND NON-PARTY HENKEL CORPORATION FOR PROTECTIVE ORDERS, DENYING HENKEL CORPORATION'S MOTION TO QUASH SUBPOENA, AND GRANTING RELIEF FROM SCHEDULING ORDER

Discovery disputes bring this case back before the Court. Plaintiff Knight Capital Partners sued defendant Henkel KGaA ("Henkel Global") for tortious interference with a business expectancy and breach of a non-disclosure agreement after Henkel Global allegedly scuttled a three-way deal KCP was brokering among itself, Henkel Corporation (the defendant's American subsidiary), and AI Sealing, LLC (AIS), a technology company that held patents on products useful in the oil production business. KCP served interrogatories and document requests on the defendant and subpoenaed documents from its American Subsidiary (Henkel US). The defendant and Henkel US refused to respond to the requests unless KCP agreed to a protective order that contained terms KCP deemed onerous and unjustified. KCP has moved to compel production. Henkel US moved to quash the subpoena, and both Henkel companies seek a protective order. Central to their arguments is the German Federal Data Protection Act, a foreign discovery blocking statute, which the defendant and Henkel US insist prevents them from turning over much of the information the plaintiff seeks.

After reviewing the materials submitted — including the affidavit from Joachim Bornkamm, a former German jurist and the defendant's foreign law expert — the Court is not convinced that the reach of the German Federal Data Protection Act is as vast as the defendant and Henkel US claim, or that it prohibits the discovery the plaintiff seeks. With one exception, the terms of the protective order sought by the defendant and Henkel US are overly restrictive and the Court will not impose them. The plaintiff's motions to compel responses to first written discovery requests to defendant and to compel compliance with subpoena to Henkel US will be granted. The defendant's amended motion for entry of protective order and non-party Henkel US's motion to quash the subpoena or for protective order will be granted in part and denied in part. The Court will adjust the case management deadlines to allow for the discovery.

## I.

The facts of the case are discussed at length in the Court's opinion and order denying the defendant's motion to dismiss. *See* dkt. #40 at 2-8. The basic facts alleged are that KCP became aware of technology patented by AIS in Texas that could be used to clean dirty equipment at refineries and oil rigs. AIS granted KCP a license for a limited period to develop and sell that technology. KCP approached AIS to broker a partnership that would include Henkel US, which would have marketed the patented products under the Henkel brand. As part of the negotiations, Henkel US executed a nondisclosure agreement that governed the way the parties would handle confidential information. KCP alleges that defendant Henkel Global induced Henklel US to subvert the negotiations so that KCP's license from AIS would expire, and the defendant could come to terms directly with AIS and cut KCP out of the venture. KCP also alleges that the nondisclosure agreement was violated along the way.

As part of its formal discovery, KCP served written requests on Henkel Global and served a subpoena on Henkel US for a variety of documents and internal communications focusing on the scuttled negotiations and contemporaneous and later communications between those entities and AIS. Those requests included (1) Henkel internal communications discussing the three-way technology licensing deal that KCP sought to enter into with Henkel and AIS; (2) communications between Henkel Global and representatives of AIS; (3) contracts executed between Henkel US or Henkel Global and AIS; (4) presentations to executives of Henkel Global about the KCP / AIS deal and any ensuing arrangement between Henkel and AIS; (5) meeting minutes concerning the KCP / AIS deal and Henkel's plans to enter relevant markets addressed by the AIS product; (6) business plans and project documents relating to the KCP deal and any separate deal with AIS; (7) communications between Henkel and Magnablend (a contemplated provider of product blending services under the three-way deal); and (8) meeting agendas, notes, and call logs evidencing any communications between Henkel and AIS.

According to the plaintiff, Henkel responded with objections to the discovery requests, in which it (1) claimed in response to almost all of the requests that disclosure of the materials was restricted under European Union data privacy laws; (2) insisted that KCP execute a protective order containing certain "standard contractual clauses" that KCP viewed as overly restrictive; and (3) purported to reserve to Henkel Global the unilateral right to redact any information that it deemed appropriate from the documents before production. KCP objects to these demands. Another feature of Kenkel's proposed protective order to which KCP objects is a two-tiered "attorney eyes only" and "confidential" designation scheme. KCP contends that Henkel has not pointed to any information so extremely sensitive that it cannot be disclosed to the principal representatives of the parties to this

lawsuit. Finally, Henkel has insisted on a provision requiring automatic filing of all "confidential" information under seal; KCP argues that the requirement is not warranted because Henkel has not advanced any basis in law or fact to justify a broad preemptive closure of the parties' filings.

## II.

"'The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.'" *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 593 (6th Cir. 2014) (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Under Rule 26, parties may obtain "discovery of any relevant, non-privileged information," *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citing Fed. R. Civ. P. 26(b)(1)), that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts may limit discovery requests for information that is outside the scope allowed by Rule 26, or is cumulative or easily obtained elsewhere. Fed. R. Civ. P. 26(b)(2)(C). In addition, "a district court may grant a protective order preventing the production of discovery to protect a party or entity from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Ohio Execution Protocol Litigation*, 845 F.3d at 236 (quoting Fed. R. Civ. P. 26(c)(1)).

"To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Ibid.* (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). Similarly, "[a] subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic*, P.C., 315 F.R.D. 220, 222 (E.D. Mich. 2016) (quotations omitted).

Two of the plaintiff's objections to Henkel's protective order demands are easily resolved. A third requires a bit more discussion.

## A. Two-tiered Confidentiality Designation

The Henkel entities propose to designate certain documents as "confidential," meaning that after production, the receiving party will limit its use to the present lawsuit and not disclose them to anyone for any other purpose; and "attorney eyes only," meaning that only counsel and experts can see the disclosed documents, but not the receiving attorney's client. KCP says that the later designation is too restrictive, but Henkel wants to embargo information that KCP's principals might use to compete with it. The nature of the claims in this case suggests that some information comprising "trade secrets" could be produced by the defendant at some point. Neither side has made any showing adequate for the Court to find that none of the information could be regarded as such, principally because the defendant has not yet produced anything in response to the plaintiff's discovery requests, and it has not identified with any specificity the extent or substance of any documents that it may produce. Nevertheless, "[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202-03 (10th Cir. 2014) (citing Fed. R. Civ. P. 26(c)(1)(G) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."); *In re City of New York*, 607 F.3d 923, 935 (2d Cir. 2010)).

The plaintiff's principal objection to the two-tier designation scheme appears to be its concern that the defendant will abuse it. But "[t]he purpose of this form of limited disclosure is to prevent a party from viewing the sensitive information while nevertheless allowing the party's lawyers to litigate on the basis of that information," and the Court "may impose such a restriction [even] over the objection of a party." *Paycom*, 758 F.3d at 1202-03 (citing Fed. R. Civ. P. 26(c)(1)). Moreover, KCP's concern may be addressed fully by an appropriate provision of the protective order allowing a party to challenge a designation by notifying the producing party and, if no agreement is reached on the disputed designation, filing an appropriate motion asking the Court to de-designate specific information.

The Henkel entities' insistence on a two-tiered confidentiality designation in the protective order will be allowed.

## B. Automatic Sealing Provision

Henkel's proposal for the automatic filing of confidential information under seal, on the other hand, is a non-starter. In *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), the Sixth Circuit made clear that sealing documents is a rare exception to the general rule of openness in federal court records — an exception that can be justified "'[o]nly [by] the most compelling reasons.'" *Id.* at 305 (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). Confidentiality designations during discovery generally are unobjectionable. However, "there is a stark difference between so-called 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other." *Ibid.*

Blanket sealing authorizations are never permitted. Instead, "courts have long recognized . . . a 'strong presumption in favor of openness' as to court records," and the "burden of overcoming that presumption is borne by the party that seeks to seal them." *Ibid.* (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983); *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)). And "even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Ibid.* (citing *Press-Enterprise Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 509-11 (1984)). Consequently, "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* at 305-06 (quoting *Baxter*, 297 F.3d at 548). Henkel's proposal for an automatic sealing provision in the protective order, therefore, is entirely out of the question.

## C.  Foreign Data Privacy Laws

The German Federal Data Protection Act broadly protects individuals "against [their] right[s] to privacy being impaired through the handling of [their] personal data." German Federal Data Protection Act § 1(1) (https://www.gesetze-im-internet.de/englisch_bdsg/englisch_bdsg.html). "'Personal data' means any information concerning the personal or material circumstances of an identified or identifiable individual (the data subject)." *Id.* § 3(1).

The Henkel entities contend that the German Federal Data Protection Act bars their production of all of the information that the plaintiff seeks, because all of the documents requested inherently would include "personal information" of persons who are employed by or do business with Henkel, such as their names, email addresses, and calendar and phone records. In support of its motion, the defendant submitted a lengthy declaration by a German legal scholar, Joachim

Bornkamm, in which Bornkamm outlined the substance of various commentaries on German data privacy laws and concluded that those laws bar the defendant from producing the requested discovery.  The Court disagrees with Herr Bornkamm's gloss on the subject — at least as it bears on this litigation — and with Henkel's limiting arguments.

"It is well settled that [foreign 'blocking'] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).  Here, the German Federal Data Protection Act does not bar the defendant from disclosing email communications and other business records included in the plaintiff's discovery requests, principally because the Act contains an express exception to the broad prohibitions on personal data disclosure.  Section 4c(1) of the Act states:

> "In connection with activities which fall in part or in their entirety within the scope of the law of the European Communities, the transfer of personal data to bodies other than [member states and entities within the EU or parties to the Agreement on the European Economic Area] shall be [allowed] even if such bodies do not guarantee an adequate level of data protection, in so far as . . . the data subject has given his/her consent, [or] the transfer is necessary . . . for the establishment, exercise or defence of legal claims."

German Federal Data Protection Act § 4c(1).  The plain language of the Act, therefore, suggests that there is no conflict between the discovery obligations under the Federal Rules of Civil Procedure and any provision of the German FDPA.

"In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.  "The court's determination [is] treated as a ruling on a question of law."  *Ibid.*  "The Rule authorizes courts to conduct independent research outside the parties'

submissions in determining foreign law." *de Fontbrune v. Wofsy*, 838 F.3d 992, 999 (9th Cir. 2016). "It is no revelation that courts look to cases, statutes, regulations, treatises, scholarly articles, legislative history, treaties and other legal materials in figuring out what the law is and resolving legal issues." *Ibid.*

When construing a foreign statute, the Court certainly must presume that the most pertinent and authoritative source on the scope and import of any foreign law is the plain language of the statute itself. And any exercise in statutory construction "must begin with the plain language of the statute because the 'language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.'" *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 428 (6th Cir. 2017) (quoting *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)); *see also SEC v. Gibraltar Global Securities, Inc.*, No. 13-2575, 2015 WL 1514746, at *2 (S.D.N.Y. Apr. 1, 2015) ("[S]tatutory construction generally begins with an analysis of the language of the statute and, if that language is clear, ends there as well. This principle applies to interpretation of foreign as well as domestic law.") (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)).

The statute does not expound any definitions of pertinent phrases such as "necessary" and "legal claims," and the parties have not pointed to any authoritative legal rulings in any jurisdiction construing them. Therefore, the Court must start by assigning those terms their ordinary meanings and construing the statute in accord with its plain language and those ordinary meanings. In this case, information concerning the defendant's communications with the plaintiff and third parties about the contemplated technology deal certainly will be "necessary" to the adjudication of the claims of tortious interference by any sensible construction of the plain language of the statute.

Moreover, it is unlikely that the information the plaintiff seeks will involve "personal" data of the disclosing entities. The plaintiff does not seek intimate, personal details of the defendant's employees. The requests, sensibly read, call only for ordinary-course-of-business communications that are typical of the day-to-day business operations of a commercial (i.e., not "personal") enterprise.

The defendant's foreign law expert sees things differently. He opines that: (1) "responding to pre-trial discovery in a U.S. process does not involve the 'protection of legal claims before a court'"; (2) "to rely on the 'protection of legal claims' exception, the discovery request has to have been made in compliance with the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters"; (3) "for German law purposes, participation in pre-trial discovery, by its very nature as an essentially non-judicial process, does not constitute a proceeding 'before a court'"; and (4) "under the terms of § 4c itself, the disclosure must be 'necessary' to defend legal claims in a court of law," but "the term 'necessary' is defined not b[y] reference to U.S. procedural law, but instead pursuant to German law"; and "disclosure under German law is 'necessary' only if acceptable under applicable European data protection law." Def.'s Am. Mot., Ex. J, Joachim Bornkamm decl. ¶ 28 (Pg ID 2056-58). These arguments fail for several reasons.

Initially, the contentions that discovery proceedings in this case do not implicate legal claims, and are not proceedings "before a court," betray a fundamental misunderstanding of the American civil justice system. Discovery in this action is governed by the Federal Rules of Civil Procedure, principally Rules 26 through 37. Those rules "*govern the procedure in all civil actions and proceedings in the United States district courts.*" Fed. R. Civ. P. 1 (emphasis added). Although parties are given considerable latitude in conducting discovery, the discovery methods ordained by

Rules 26 through 36 consist of *formal* discovery, which, fundamentally is court-supervised discovery.

Next, the circular proposition that disclosure under the litigation exception is permitted only where the disclosure is accompanied by all of the protections contemplated under the Data Protection Act defies its plain text. *See* German Federal Data Protection Act § 4c(1) (permitting disclosure under the litigation exception "even if [the recipient *does*] *not guarantee an adequate level of data protection*" (emphasis added)). Next, the expert's opinion that discovery is permissible only when conducted according to the Hague Convention is flatly contrary to the Supreme Court's decision in the *Aerospatiale* case:

> An interpretation of the Hague Convention as the exclusive means for obtaining evidence located abroad would effectively subject every American court hearing a case involving a national or a contracting state to the internal laws of that state. Interrogatories and document requests are staples of international commercial litigation, no less than of other suits, yet a rule of exclusivity would subordinate the court's supervision of even the most routine of these pretrial proceedings to the actions or, equally, to the inactions of foreign judicial authorities.

482 U.S. at 539. The defendant's expert did not cite any judicial decision of any court in any jurisdiction endorsing his view of the law, and the Court is not bound by his synopsis of scholarly commentary on the topic. *Gibraltar Global Securities, Inc.*, 2015 WL 1514746, at *2 ("The opinion of an expert as to foreign law does not bind the court, even if it is uncontradicted."). Moreover, even the defendant's expert conceded in a footnote to his exegesis that "[s]ome commentators disagree" with his analysis. Bornkamm decl. ¶ 28 n.43 (Pg ID 2057).

Finally, the defendant's contention that the Court must construe the Data Protection Act by resorting solely to interpretations of German law by German authorities is simply wrong. "In determining foreign law, the court may consider *any relevant material or source*, including

testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1 (emphasis added). And the Court certainly has both the authority and the duty to construe the meaning of the statute in the first instance, informed by the ordinary principles of statutory construction and by reference to the plain language of the statute itself. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). "Those who apply the rule to particular cases, must of necessity expound and interpret that rule"; if "two laws conflict with each other, the courts must decide on the operation of each." *Ibid.*; *see also Aerospatiale*, 482 U.S. at 542 ("It is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions, and we are satisfied that foreign tribunals will recognize that the final decision on the evidence to be used in litigation conducted in American courts must be made by those courts.").

"As the party seeking to rely on German and European Union law, it is [the defendant's] burden to demonstrate that these laws bar production of the documents at issue." *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, No. 14-01009, 2014 WL 3965062, at *4 (N.D. Cal. Aug. 13, 2014). Other district courts likely would reach the same conclusion. *Id.* at *6 ("Having weighed the relevant factors, the Court finds that they weigh in favor of compelling Searchmetrics to supplement its interrogatory responses and document production to include information and documents it withheld on the basis of international privacy protection laws.").

Moreover, even if the Court assumes that there is some conflict between domestic and foreign law governing the defendant's disclosure of the requested data, the factors suggested by the Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) weigh in favor of compelling the disclosure. Those factors are: (1) the importance to the litigation of the documents

or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Aerospatiale*, 482 U.S. at 544 n.28. Application of those factors to the specific discovery requests satisfies "the concept of international comity[, which] requires in [the discovery] context a more particularized analysis of the respective interests of the foreign nation and the requesting nation" as they bear on the question whether discovery should be allowed or barred. *Id.* at 543. Let's take each factor in turn.

*First*, the documents and information requested here certainly are important to the resolution of the plaintiff's claim for tortious interference with a business expectancy, because they concern discussions that Henkel and its employees and principals had with KCP and third parties about entering into (or not) an agreement to market products for cleaning oil refinery equipment based on technology owned and to be supplied by KCP's technology partner. The information requested goes to the heart of the claims. This factor therefore favors compelling the disclosure of the documents requested, notwithstanding that some of those documents may include some personal information of foreign citizens.

*Second*, the plaintiff's requests are adequately specific and seek disclosure only of those documents evidencing discussions pertinent to the contemplated three-way partnership during the approximately two-year span of the negotiations. The plaintiff's requests do not demand any substantial mass of unrelated personal information of, for example, employees, customers, or third-party partners of Henkel Global that were uninvolved with the negotiations and the technology

-13-

discussed in the course of the proposed deal. This factor does not weigh heavily against disclosure, and likely favors compelling the disclosure.

As to the third factor, it is impossible to discern how much of the information requested may have originated in the United States, since no documents have been produced, identified, or described by the defendant with any specificity. However, it is evident from the nature of the requests that at least some of the documents probably originated here, since some requests concern communications between Henkel Global and domestic counter-parties to the deal, which include KCP, KCP's technology partner (AIS), Magnablend (the proposed US "blending" contractor), and Henkel US (the purportedly independent domestic affiliate of Henkel Global). This factor, therefore, is either neutral or weighs slightly in favor of compelling disclosure.

*Fourth*, the defendant has not suggested any plausible alternative means for obtaining the requested information, so this factor weighs heavily in favor of compelling disclosure.

*Fifth*, suffering non-compliance with the plaintiff's discovery requests would fatally undermine the important interest of the United States in rendering an adequately informed decision on the rights of a civil plaintiff before this Court. *BrightEdge*, 2014 WL 3965062, at *5 ("The United States obviously has a substantial interest in 'vindicating the rights of American plaintiffs.'" (quoting *In re Air Crash at Taipei*, 211 F.R.D. 374, 379 (C.D. Cal. 2002)). That interest — which will be advanced with due regard to appropriate protections against unwarranted disclosure of any sensitive information that may be disclosed, under the terms of a reasonably framed protective order — is not outweighed by the concerns of the German government with protecting its citizens from unjustified compromises of their personal information, particularly where the statute on point expressly allows disclosures that are necessary for the purposes of litigation. *See ibid.* ("Conversely,

the German interest in enforcing the blocking statute[s] at issue here 'is entitled to less deference since it is not a substantive rule of law at variance with the law of the United States, but rather one whose primary purpose is to protect its citizens from discovery obligations in foreign courts.'" (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775, 2010 WL 2976220, at *2 (E.D.N.Y. July 23, 2010)).

The defendant's concerns premised on other German statutes that impose civil and criminal penalties for violations of the Data Protection Act are not sufficient to move this Court to disregard its duty to render a fully informed disposition of this case, particularly where a sensible construction of the statute in question reveals that the disclosure would not violate the Act, and the defendant has not pointed to any information to suggest that it faces any plausible risk of an enforcement action by German authorities. *See Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1282 (7th Cir. 1990) ("'The fact that foreign law may subject a person to criminal sanctions in the foreign country if he produces certain information does not automatically bar a domestic court from compelling production.'" (quoting *United States v. First Nat. Bank of Chicago*, 699 F.2d 341, 345 (7th Cir. 1983)).

The defendant also contends that, "according to some legal authorities," the German Telecommunications Act forbids employers from accessing employee email "where the employer allows the use of corporate email for private purposes."  But that concern carries little weight here because the nature of the plaintiff's document requests does not suggest that the defendant's responsive production will include any email sent by anyone for any private purpose.

Finally, the defendant has cited no authority for the proposition that its responsive production must be conditioned on the plaintiff's execution of a laundry list of model protective clauses

proffered by the defendant. The proposed language is taken from extensive and apparently aspirational language propounded by the European Commission as guidelines for compliance with the Data Protection Act in cases where full compliance is required before any disclosure may proceed. Here, full compliance with those aspirational conditions plainly is not required, because the statute expressly permits disclosure under the litigation exception "even if [the recipient does] not guarantee an adequate level of data protection." German Federal Data Protection Act § 4c(1).

Neither Henkel Global nor its American subsidiary has advanced sufficient reasons for resisting the production of documents called for in KCP's written discovery requests to the defendant and the subpoena directed to Henkel US. The Court, therefore, will grant the motions to compel production.

III.

Although the issuance of a protective order that guards the parties' information produced in discovery so that it is not misused by strangers to this litigation is prudent, many of the conditions demanded by the defendant and non-party Henkel US are not warranted or reasonable. Germany's data protection law will not block the production of the information requested by KCP in its discovery requests. Because of the delay in the production of documents, relief from the scheduling order is warranted.

Accordingly, it is **ORDERED** that the plaintiff's motions to compel responses to first written discovery requests [dkt. #43] and to compel compliance with its subpoena by Henkel Corporation [dkt. #58] are **GRANTED**. The defendant fully must respond to the plaintiff's written discovery requests, and Henkel Corporation must respond to the subpoena, **on or before December 21, 2017**.

It is further **ORDERED** that the defendant's amended motion for entry of protective order [dkt. #55] is **GRANTED IN PART AND DENIED IN PART**. A separate protective order will issue.

It is further **ORDERED** that non-party Henkel Corp.'s motion to quash the subpoena is **DENIED**, and its request for a protective order [dkt. #57] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the motions for relief from the scheduling order [dkt. #45, 46, 50] are **GRANTED**. An amended Case Management and Scheduling order will enter.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   November 30, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 30, 2017.

s/Susan Pinkowski
SUSAN PINKOWSKI