**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KNIGHT CAPITAL PARTNERS CORPORATION,
a Michigan Corporation,

|  |  |
|---|---|
|  | Case No. 2:16-cv-12022-DML-APP |
| Plaintiff, | Hon. David M. Lawson |

v.

HENKEL AG & COMPANY, KGaA,
a German partnership limited by shares,

Defendant.

_____/

| KICKHAM HANLEY PLLC | KIRKLAND & ELLIS LLP |
|---|---|
| GREGORY D. HANLEY (P51204) | ATIF KHAWAJA (NY Bar 4156170) |
| JAMIE WARROW (P61521) | SHIREEN BARDAY (NY Bar 4657359) |
| EDWARD F. KICKHAM JR. (P70332) | ATTORNEYS FOR HENKEL AG & CO. KGAA |
| ATTORNEYS FOR KNIGHT CAPITAL PARTNERS | 601 LEXINGTON AVENUE, |
| 32121 WOODWARD AVENUE, SUITE 300 | NEW YORK, NY 10022 |
| ROYAL OAK, MICHIGAN 48073 | (212) 446 4800 |
| (248) 544-1500 | AKHAWAJA@KIRKLAND.COM |
| GHANLEY@KICKHAMHANLEY.COM | SHIREEN.BARDAY@KIRKLAND.COM |
| JWARROW@KICKHAMHANLEY.COM | |
| EKICKHAMJR@KICKHAMHANLEY.COM | MILLER, CANFIELD, PADDOCK AND STONE P.L.C. |
| | THOMAS W. CRANMER (P25252) |
| | 840 WEST LONG LAKE ROAD, SUITE 150 |
| | TROY, MI  48098 |
| |  (248) 267-3381 |
| | CRANMER@MILLERCANFIELD.COM |

---

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING**
**PLAINTIFF'S PRINCIPAL'S 2012 FINRA MATTER**

Plaintiff Knight Capital Partners Corporation ("KCP") brings this motion for

in limine pursuant to Fed. R. Evid. 401, Fed. R. Evid. 403, Fed. R. Evid. 404, Fed. R.

Evid. 608 as well as the facts and law stated in KCP's brief in support of this motion,

which KCP relies upon and incorporates herein.

Pursuant to LR 7.1 KCP states that the relief requested pursuant to this motion

has been the subject of email communication between counsel and a telephone conference held on August 17, 2018.  No concurrence has been obtained in the motion despite KCP's reasonable and good faith efforts to obtain such concurrence.

Based upon the facts and law stated in KCP's brief in support of this motion, which KCP relies upon and incorporates herein, KCP requests that the Court grant KCP's Motion in Limine and exclude evidence regarding Mr. Nona's 2012 FINRA disciplinary matter.

Respectfully submitted,
KICKHAM HANLEY PLLC

/s/ Jamie Warrow
Jamie Warrow (P61521)
Attorneys for Knight Capital Partners
jwarrow@kickhamhanley.com

Dated: August 28, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filing Participants.

/s/ Jamie Warrow
Jamie Warrow

KH155938

2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KNIGHT CAPITAL PARTNERS CORPORATION,
a Michigan Corporation,

                                Case No. 2:16-cv-12022-DML-APP

      Plaintiff,                 Hon. David M. Lawson

v.

HENKEL AG & COMPANY, KGaA,
a German partnership limited by shares,

      Defendant.

_____/

<table>
<tr><td>

KICKHAM HANLEY PLLC
GREGORY D. HANLEY (P51204)
JAMIE WARROW (P61521)
EDWARD F. KICKHAM JR. (P70332)
ATTORNEYS FOR KNIGHT CAPITAL PARTNERS
32121 WOODWARD AVENUE, SUITE 300
ROYAL OAK, MICHIGAN 48073
(248) 544-1500
GHANLEY@KICKHAMHANLEY.COM
JWARROW@KICKHAMHANLEY.COM
EKICKHAMJR@KICKHAMHANLEY.COM

</td><td>

KIRKLAND & ELLIS LLP
ATIF KHAWAJA (NY BAR 4156170)
SHIREEN BARDAY (NY BAR 4657359)
ATTORNEYS FOR HENKEL AG & CO. KGAA
601 LEXINGTON AVENUE,
NEW YORK, NY 10022
(212) 446 4800
AKHAWAJA@KIRKLAND.COM
SHIREEN.BARDAY@KIRKLAND.COM

MILLER, CANFIELD, PADDOCK AND STONE P.L.C.
THOMAS W. CRANMER (P25252)
840 WEST LONG LAKE ROAD, SUITE 150
TROY, MI  48098
 (248) 267-3381
CRANMER@MILLERCANFIELD.COM

</td></tr>
</table>

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE**
**REGARDING PLAINTIFF'S PRINCIPAL'S 2012 FINRA MATTER**

# CONTENTS

STATEMENT OF ISSUES PRESENTED ........................................................ ii

INDEX OF AUTHORITIES ....................................................................... iii

I.   INTRODUCTION ........................................................................... 1

II.  MR. NONA'S FINRA DISCIPLINARY ACTION AND THE NATURE, EFFECT AND
     CONTENT OF THE ACCEPTANCE, WAIVER AND CONSENT ........................ 4

III. LEGAL STANDARD FOR MOTION IN LIMINE ................................. 5

IV.  THE GOVERNING COURT RULES ...................................................... 6

     A.   Relevant Evidence Under Fed. R. Evid. 401 and Fed. R. Evid. 402 ............... 6

     B.   Unfair Prejudice Under Fed. R. Evid. 403 ........................................ 6

     C.   Admission of Propensity Evidence Under Fed. R. Evid. 404(b) ..................... 7

     D.   Admission of Evidence Under Fed. R. Evid. 608(b) ............................. 9

V.   EVIDENCE REGARDING MR. NONA'S FINRA DISCIPLINARY ACTION IS
     IRRELEVANT TO THE CLAIMS AND DEFENSES PRESENTED IN THIS CASE AND
     INADMISSIBLE UNDER THE GOVERNING COURT RULES ........................... 11

     A.   Evidence Related to the FINRA Matter is Irrelevant Pursuant to F.R.E. 401 .............. 11

     B.   Evidence Related to the FINRA Matter is Unfairly Prejudicial Pursuant to F.R.E. 403 14

     C.   Evidence Related to the FINRA Matter is Inadmissible Pursuant to F.R.E. 404 .......... 15

     D.. Extrinsic Evidence Related to the FINRA Matter is Inadmissible Pursuant to F.R.E. 608
     .................................................................................................. 16

     VI. CONCLUSION ....................................................................... 17

## STATEMENT OF ISSUES PRESENTED

Should this Court grant Plaintiff's motion *in limine* and exclude evidence related to Plaintiff's principal's 2012 a Financial Industry Regulatory Authority ("FINRA") disciplinary matter under circumstances where the information sought by Defendant is not relevant to any claim or defense, is not important to resolving any issue in this case, and thus, is not admissible pursuant to FRE 401?

**Plaintiff states: Yes.**

**Defendant states: No.**

**The Court should state: Yes.**

Should this Court grant Plaintiff's motion *in limine* and exclude evidence related to Plaintiff's principal's 2012 FINRA disciplinary matter pursuant to F.R.E. 403, F.R.E. 404(b) and F.R.E. 608 under circumstances where the evidence is highly and unfairly prejudicial, will have the tendency to confuse the issues, and will have the tendency to mislead the jury?

**Plaintiff states: Yes.**

**Defendant states: No.**

**The Court should state: Yes.**

## STATEMENT OF CONTROLLING AUTHORITY

Plaintiff relies upon Fed. R. Evid. 401, Fed. R. Evid. 403, Fed. R. Evid. 404, Fed. R. Evid. 608 as the controlling authority for this motion. Plaintiff also relies upon the following authorities in support of its motion:

## INDEX OF AUTHORITIES

Cases

*Battle v. O'Shaughnessy*, 2012 U.S. Dist. LEXIS 143471 ...................................................... 9, 17
*Deitchman v. Bear Stearns Sec. Corp.*, 2007 U.S. Dist. LEXIS 94796 (S.D. Fla. Dec. 28, 2007) ................ 3
*Edgerson v. Matatall*, No. 10-14954, 2014 U.S. Dist. LEXIS 4967 (E.D. Mich. Jan. 15, 2014) ..... 7, 8, 16
*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013) .................................................................. 7
*Hollins v. City of Milwaukee*, 574 F.3d 822 (7th Cir. 2009) ..................................................... 9, 17
*Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844 (N.D. Ohio 2004) ....................................................... 5
*Luce v. United States*, 469 U.S. 38; 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) .......................... 5, 6
*Martin v. United States*, 2007 U.S. Dist. LEXIS 22791 (W.D. Mich. March 29, 2007) ...................... 9, 17
*McLeod v. Parsons Corp.*, 73 F. App'x 846 (6th Cir. 2003) ........................................................ 11
*North v. Smarsh, Inc.*, 160 F. Supp.3d 63 (D.D.C. 2015) .......................................................... 4
*Palmer v. Allen*, No. 14-cv-12247, 2017 U.S. Dist. LEXIS 7336 (E.D. Mich. Jan. 19, 2017) .................. 5
*Spencer v. MacDonald*, No. 14-cv-13858, 2016 U.S. Dist. LEXIS 58357 (E.D. Mich. May 3, 2016) ........ 7
*United States v Brugnara*, 2015 U.S. Dist. LEXIS 57577 (ND Cal, Apr. 23, 2015) .......................... 11, 16
United States v. Brawner, 173 F.3d 966 (6th Cir. 1999) ............................................................. 5
*United States v. Ellisor*, 522 F.3d 1255 (11th Cir. 2008) .......................................................... 8
*United States v. Johnson*, 581 F.3d 320 (6th Cir. 2009) ........................................................... 14
*United States v. McCoy*, 848 F.2d 743 (6th Cir. 1988) ............................................................. 14
*United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996) ..................................................... 8
*United States v. Stapleton*, 2013 U.S. Dist. LEXIS 160442 (E.D. Ky. Nov. 8, 2013) ....................... 14

**Rules**

*Fed. R. Evid. 401* ................................................................................................... passim
*Fed. R. Evid. 402* ................................................................................................... passim
*Fed. R. Evid. 403* ................................................................................................... passim
*Fed. R. Evid. 404(b)* ............................................................................................... passim
*Fed. R. Evid. 608(b)* ............................................................................................... passim

## I.   INTRODUCTION

Defendant, Henkel AG & CO., KGaA ("Henkel KGaA") cannot provide substantive defenses to the tortious interference and breach of contract claims stated in KCP's complaint.[1] Henkel KGaA cannot reasonably deny that its representative, Cedric Berthod, interfered with KCP's business relationship and expectancy with its subsidiary, Henkel Corporation—because the evidence ascertained demonstrates that Berthod unequivocally did. *See e.g.* R. 75-2, Transcript of the June 5, 2015 telephone conversation between Cedric Berthod and Fadi Nona.

Henkel KGaA also cannot reasonably deny that, using KCP's confidential information, it both: (a) pursued a direct deal with the technology owner, AI Sealing; and simultaneously (b) pursued the development of the refinery cleaning technology internally in order to subvert KCP's significant financial interests in the distribution deal. *See e.g.* R. 75-3, Email dated July 23, 2015 documenting weekly conference calls between AI Sealing representatives and Henkel KGaA representatives; R. 139-32, Henkel Corp 00004578 (correspondence wherein Cedric Berthod acknowledges that the "AIS project is somehow on hold" and "it was agreed to pursue an internal route" regarding the "refinery project"). In fact, the evidence in this matter shows that Henkel KGaA's internal work on the oil refinery cleaning technology project did not

---

[1]   Nor will it be able to substantively defend the potential claim KCP seeks to assert in its proposed amended complaint under Connecticut's Unfair Trade Practices Act ("CUTPA").

wind down until early 2016.  *See e.g.* R. 139-6, Henkel KGaA 00037488.

Henkel KGaA also cannot state in good faith that it honored the nondisclosure agreement between KCP and Henkel Corporation, which Henkel KGaA was bound by as an affiliate of Henkel Corporation.  Again, the evidence demonstrates that Henkel KGaA necessarily breached this agreement in order to simultaneously pursue both a direct deal with AI Sealing and develop the technology internally.

Instead of offering any substantive defenses to Plaintiff's claims, Henkel KGaA has concocted "defenses" that attack the character of KCP's principals.  With specific regard to KCP's principal Fadi Nona, Henkel KGaA attempts to defend its own wrongful conduct by asserting that "Mr. Nona made a series of misrepresentations about himself" which would have "precluded" KCP "from ever being a business partner with Henkel Corporation or Henkel KGaA."[2]  *See e.g.* R. 74 Pg. ID 2695. These purported misrepresentations all stem from a Financial Industry Regulatory Authority ("FINRA") disciplinary action and resulting Letter of Acceptance, Waiver and Consent ("AWC") entered into by Mr. Nona in 2012, long before KCP ever became involved with Henkel KGaA.

It is anticipated that, at trial, Henkel KGaA will seek to introduce evidence of Mr. Nona's purported violations of various FINRA rules arising from a formal

---

[2]   Henkel qualified its assertion that the "series" of (purported) misrepresentations made by Mr. Nona are in fact speculative "potential misrepresentations." R. 74, Pg. ID 2695.

complaint made in 2010 by one of Mr. Nona's former clients and involving events that happened 14 years ago, in 2004.  Mr. Nona's conduct is described in the AWC (R. 108, Pg. ID. 4282 *et seq.*) which was signed by Mr. Nona in settlement of the allegations made by FINRA.

KCP seeks to exclude introduction of evidence related to the FINRA disciplinary action because (a) Mr. Nona's alleged FINRA rule violation is wholly irrelevant as to any substantive claim or defense made in the case; and (b) the evidence is unfairly prejudicial; (c) the evidence would cause confusion of the issues, and (d) the evidence is intended to unduly and improperly influence the jury.[3]  Mr. Nona's FINRA disciplinary action, which is simply immaterial as to whether or not Henkel KGaA breached the NDA or tortiously interfered with KCP's business expectancy, cannot excuse Henkel KGaA's illicit conduct and is not a defense to KCP's claims.

---

[3]      The AWC should also be excluded as evidence based on the policy interest of keeping settlement negotiations and offers of compromise confidential. Federal Rule of Evidence 408.  Here the AWC was the product of settlement negotiations between FINRA and Mr. Nona. Allowing the FINRA's findings in the AWC to be used against KCP in this unrelated litigation would discourage these types of settlements.  The Court should reasonably find that the AWC and testimony related to the FINRA disciplinary action are inappropriate forms of evidence based on the same considerations motivating Rule 408. *See e.g. Deitchman v. Bear Stearns Sec. Corp.*, 2007 U.S. Dist. LEXIS 94796, at *13-14 (S.D. Fla. Dec. 28, 2007)(Exhibit 5).

## II.   Mr. Nona's FINRA Disciplinary Action and The Nature, Effect and Content of the Acceptance, Waiver and Consent

An Acceptance, Waiver and Consent ("AWC") is a settlement contract between FINRA and a respondent designed to resolve allegations of rule violations without formal hearing.  Indeed, according to FINRA Rule 9216(a)(4), an accepted AWC "shall be deemed final and shall constitute the **complaint, answer, and decision in the matter**." *North v. Smarsh, Inc.,* 160 F. Supp.3d 63, 71 n.3 (D.D.C. 2015)(emphasis added).

Based upon the instruction of his defense counsel in the FINRA disciplinary proceeding, who advised Mr. Nona that it would be an expensive fight against FINRA with an "end result [that] would not be fruitful" (R. 108, Pg. ID. 4319) Mr. Nona voluntarily signed the AWC (R. 108, Pg. ID. 4288) under its terms, accepting and consenting to the entry of FINRA's findings contained in the AWC, but without admitting or denying same.  R. 108 Pg. ID. 4282.  Once the AWC was accepted by FINRA, it became a binding settlement agreement between FINRA and Mr. Nona.

The AWC provides a detailed factual background describing Mr. Nona's alleged "violative conduct," identifies the exact FINRA rules alleged to be violated, and describes the facts and circumstances supporting FINRA's allegations. *See* R. 108 Pg. ID. 4282—Pg. ID. 4287.  Under its terms, however, it cannot be used as evidence to prove the allegations contained therein (R. 108 Pg. ID. 4288, ¶ B), and further permits Mr. Nona to take inconsistent factual positions in litigation proceedings—

such as this one—to which FINRA is not a party. R. 108 Pg. ID. 4288, ¶ C (4). Currently, Mr. Nona is seeking to have his license reinstated and has been advised by his attorney not to speak further about the events contained in the AWC. R. 108, Pg. ID. 4319.

### III.   LEGAL STANDARD FOR MOTION IN LIMINE

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). The purpose of a motion *in limine* is to eliminate "evidence that is clearly inadmissible for any purpose" before trial. *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). A district court rules on evidentiary motions in limine "to narrow the issues remaining for trial and to minimize disruptions at trial." United States v. Brawner, 173 F.3d 966, 970 (6th Cir. 1999). The guiding principle is to "ensure evenhanded and expeditious management of trials." *Ind. Ins.*, 326 F. Supp. 2d at 846. As further discussed in *Palmer v. Allen*, No. 14-cv-12247, 2017 U.S. Dist. LEXIS 7336, at *1-3 (E.D. Mich. Jan. 19, 2017)(Exhibit 1):

> Although neither the Federal Rules of Evidence, nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*, the Supreme Court has allowed district courts to rule on motions *in limine* "pursuant to the district court's inherent authority to manage the course of trials." *See Luce*, 469 U.S. at 41 n.4. District courts are granted very broad discretion in determining whether the probative value of evidence outweighs any danger of unfair prejudice. *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989).

A district court should grant a motion to exclude evidence *in limine* "only when [that] evidence is *clearly* inadmissible on *all* potential grounds." *Ind. Ins.*, 326 F. Supp. 2d at 846 (emphasis added). In cases where that high standard is not met, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.*  Denial of a motion to exclude evidence *in limine* does not necessarily mean that the court will admit the evidence at trial. *See Luce*, 469 U.S. at 41. "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42. [*Parker, supra*, at *2-3, emphasis in original.]

As further discussed herein, evidence related to Mr. Nona's FINRA disciplinary action is "clearly inadmissible on *all* potential grounds." The Court should grant Plaintiff's motion *in limine* and exclude evidence related to it.

## IV.   THE GOVERNING COURT RULES

### A. Relevant Evidence Under Fed. R. Evid. 401 and Fed. R. Evid. 402

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence is admissible unless any of the following provides otherwise: 1) the United States Constitution; 2) a federal statute; 3) these rules; or 4) other rules prescribed by the Supreme Court.  Fed. R. Evid. 402.

### B. Unfair Prejudice Under Fed. R. Evid. 403

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence." *Spencer v. MacDonald*, No. 14-cv-13858, 2016 U.S. Dist. LEXIS 58357, at *9 (E.D. Mich. May 3, 2016)(Exhibit 2); *Edgerson v. Matatall*, No. 10-14954, 2014 U.S. Dist. LEXIS 4967, at *4-7 (E.D. Mich. Jan. 15, 2014)(Exhibit 3).

### C. Admission of Propensity Evidence Under Fed. R. Evid. 404(b)

"Rule 404(b) bars the admission of 'propensity evidence,' defined as '[e]vidence of a crime, wrong, or other act . . .' to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Edgerson, supra, citing Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). "However, [Rule 404(b)] permits the admission of prior 'bad acts' for other purposes, 'such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id.*

The Rule 404(b) inquiry consists of three parts. "First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as whether the 'other act' is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the 'other acts' evidence is more prejudicial than probative under Rule 403." *See Edgerson, supra,* at *5-6, *citing United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001); *see also Flagg*, 715 F.3d at 176.

In *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996) (discussed at length in *Edgerson, supra* at *6-7) the Sixth Circuit stated the following guidelines for a making a Rule 404(b) determination:

> Upon objection…**the proponent of the evidence…should be required to identify the *specific* purpose or purposes for which [the proponent] offers the evidence of "other crimes, wrongs, or acts."** By so requiring, we do not mandate hyper technicality. It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is 'in issue' often depends on [a party's] theory and the proofs as they develop. Nevertheless, **the [proponent's] purpose in introducing the evidence must be to prove a fact that [a party] has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove**.
>
> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove *motive* or *intent* or *identity* some other purpose, is "material;" that is, whether it is "in issue" in the case.
>
> If the court finds it is, the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the *specific* purpose for which they may consider the evidence. [*Merriweather* at 1076-77 (internal citation omitted; emphasis added)].

*See also United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008)(Rule 404(b) evidence can only be admitted if (1) the evidence is relevant to an issue in the litigation other than [a party's] character; (2) the probative value is not substantially outweighed by its undue prejudice; and (3) the [proponent] party offers sufficient proof so that the jury could find that defendant committed the act).

### D. Admission of Evidence Under Fed. R. Evid. 608(b)

Federal Rule of Evidence 608(b) governs admissibility of evidence regarding a witness's character for truthfulness or untruthfulness, as to specific instances of conduct, and provides in pertinent part: "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness... Fed. R. Ev. 608(b); *Blake v. Batmasian*, U.S. Dist. LEXIS 171720, at *18-20 (S.D. Fla. Sep. 2, 2016)(R. 108, Pg. ID.  4327).

Thus, at the Court's discretion, Rule 608(b) permits cross examination of the witness about prior instances of misconduct that reflect on the truthfulness of that witness, however, "**the probative value of such evidence must still not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.**" *Battle v. O'Shaughnessy*, 2012 U.S. Dist. LEXIS 143471 (N.D. Ill. Oct. 4, 2012), *citing Hollins v. City of Milwaukee*, 574 F.3d 822, 828-829 (7th Cir. 2009) R. 71-7; *Martin v. United States*, No. 02 CR 10024, 2007 U.S. Dist. LEXIS 22791 at *4 (W.D. Mich. March 29, 2007) R. 71-8; *United States v Stoecker*, 215 F3d 788 (7th Cir. 2000).

However, even if the Court permits cross examination of a witness regarding prior instances of misconduct, F. R. E. 608(b) does not condone the use of extrinsic evidence during that cross examination.  *See Blake v Batmasian*, 2017 U.S. Dist. LEXIS

26712 *4-5 (SD Fla, Feb. 15, 2017)(R. 71-9) wherein the court stated:

> **Subsection (b) of that rule prohibits a party from introducing extrinsic evidence of prior specific instances of a witness' conduct in order to attack a witness' character for truthfulness**, but the court may allow instances of prior conduct be inquired into if they are probative of untruthfulness. Acts probative of untruthfulness under Rule 608(b) include forgery, perjury and fraud. *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994). Crimes such as theft, robbery or shoplifting do not involve dishonesty or false statement under Rules 608 or 609. *United States v. Farmer*, 923 F.2d 1557, 1567 (11th Cir. 1991). **When applying Rule 608(b), it is essential to remember that the questioner is bound to accept the witness' answers as to the alleged conduct bearing on untruthfulness**. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 608.22 (2d ed. 2011); *U.S. v. Matthews*, 168 F.3d 1234, 1244 (11th Cir. 1999). **Hence, the party challenging the veracity of the witness cannot later introduce extrinsic evidence to disprove any statement the witness makes in this respect**.

Moreover, F. R. E. 608(a) requires impeachment of a witness to be conducted through opinion or reputation testimony and as such, specific prior conduct is not permissible evidence pursuant to F. R. E. 608(b):

> If [the witnesses] testify in the government's case-in-chief, however, defendant will be allowed to impeach their character for truthfulness. FRE 608(a) states that a "witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." **However, FRE 608(b) states that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Thus, if [the witnesses testify], defendant will be allowed to attack their credibility with** *opinion* **testimony of their character for truthfulness.** *Defendant will not, however, be allowed to introduce evidence related to any specific acts that demonstrate their alleged character for dishonesty.* [*United States v Brugnara*, 2015 U.S. Dist. LEXIS 57577 (ND

Cal, Apr. 23, 2015)(R.71-10)].

*See also McLeod v. Parsons Corp.,* 73 F. App'x 846, 854-55 (6th Cir. 2003).

**V.   EVIDENCE REGARDING MR. NONA'S FINRA DISCIPLINARY ACTION IS IRRELEVANT TO THE CLAIMS AND DEFENSES PRESENTED IN THIS CASE AND INADMISSIBLE UNDER THE GOVERNING COURT RULES**

In this case, evidence related to Mr. Nona's FINRA matter is inadmissible pursuant to all of the Court Rules discussed above.

### A. Evidence Related to the FINRA Matter is Irrelevant Pursuant to F.R.E. 401

Initially, pursuant to F.R.E. 401, evidence related to the FINRA action does not have any tendency to make *any* fact in this case more or less probable than it would be without the evidence. Moreover, Henkel KGaA has not (and cannot) identify with specificity exactly how evidence of Mr. Nona's FINRA matter is of any consequence in determining the action.

The closest Henkel KGaA has come to any sort of specificity regarding this evidence is to suggest (without evidentiary support) that had it known about Mr. Nona's FINRA matter, this circumstance somehow would have precluded KCP from ever doing business Henkel Corporation or Henkel KGaA. However, even if *arguendo* that statement is true, it does not obviate Henkel KGaA's own wrongful actions and does not supply any defense to Plaintiff's claims.

Evidence related to Mr. Nona's FINRA matter is not relevant and has no bearing on Plaintiff's claims against Defendant—*i.e.* Henkel KGaA's own bad acts of tortiously interfering with KCP business expectancy with Henkel Corporation, breach

of the NDA and/or the pending amended claim, violation of Connecticut's Unfair Trade Practices Act ("CUTPA"). Testimony regarding the FINRA disciplinary action will not elucidate whether Henkel KGaA has any valid defense against the claims made by KCP. Though Henkel KGaA may assert that inquiry into Mr. Nona's FINRA disciplinary action supports some tortured causation defense, *i.e.* Henkel KGaA would not have pursued an agreement with KCP had it known about Mr. Nona's FINRA issue—its own actions do not bear this out.

Specifically, as Henkel KGaA knows, Henkel Corporation was always to be the face of this deal. In fact, Henkel KGaA, most specifically Cedric Berthod, insisted that KCP would have no role with the customers. Henkel Corporation and Henkel KGaA wanted to manage their customers using their representatives. Any personnel hired by KCP would have worked in the background, supporting the Project from a technical standpoint. Simply, KCP was the business broker, working behind the scenes—rendering Mr. Nona's purported past sins irrelevant as to public impression.

Perhaps even more compelling, is that neither Henkel KGaA nor Henkel Corporation thought it was important to conduct a background check into Mr. Nona's personal history.[4]  At the time the Project was being negotiated, the issue of

---

[4]  While Henkel KGaA stated in its written discovery responses that it conducted a background check of Mr. Nona, it was unable to identify any specific actions performed in this regard except noting that KCP, through its principals were required to affirm Henkel's Code of Conduct, and answer other questions regarding KCP. Thus, Henkel KGaA acknowledged no independent investigation was performed. *See*

Mr. Nona's past, and specifically his FINRA disciplinary action was of no consequence to Henkel KGaA—and only became a focus in this lawsuit as a means for Henkel KGaA to intimidate Mr. Nona.

Henkel KGaA cannot deny its own actions of intentionally cutting KCP out of the Project—initially to work directly with AIS and later to use the information it gleaned under the governing NDA to develop the Project internally on its own. These nefarious actions are well supported by Henkel KGaA's and Henkel Corporation's own documents.  Instead, Henkel KGaA must resort to the "defense" of character

---

*generally,* Defendant's Responses to Plaintiff's Third Interrogatories. R. 108 Pg. ID. 4343.

More recently, Henkel Corporation's vice president and associate general counsel, John Preysner testified that he was unaware of any background check conducted by Henkel Corporation or Henkel KGaA of Mr. Nona, but knew that he did not personally conduct one, and no one at Henkel specifically asked him to conduct one:

> Q: …By the way, when you were negotiating with KCP, did Henkel ever conduct any kind of background check concerning the principals of KCP?
> MR. KHAWAJA: Objection to form, foundation.
> A. Did Henkel do background checks? I know I didn't. I don't know what all of Henkel did.
> Q. Well, did anybody ever tell you that they had looked into the background of, say, Mr. Nona?
> A. No one specifically did.
> Q. Are you aware, as you sit here today, what efforts, if any, were taken by Henkel to investigate the background the personal backgrounds of Mr. – the personal background of Mr. Nona?
> A. Of Mr. Nona?
> Q. Yes.
> A. I'm not -- I don't know.

*See* June 6, 2018 Deposition Testimony of John Preysner at pp. 17, 128. (Exhibit 6).

assassination of KCP's principals, hoping to embarrass them into abandoning this lawsuit. The Court should not condone such conduct and find that pursuant to F.R.E. 401, the evidence regarding Mr. Nona's FINRA matter is irrelevant and inadmissible.

**B. Evidence Related to the FINRA Matter is Unfairly Prejudicial Pursuant to F.R.E. 403**

Even if the Court were to determine that evidence related to Mr. Nona's FINRA action was relevant pursuant to F.R.E. 401, pursuant to F.R.E. 403, its probative value is substantially outweighed by the danger of unfair prejudice and a confusion of the issues—which may mislead the jury.

The advisory comment to Fed. R. Evid. 403, defines "unfair prejudice" as a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." The Sixth Circuit has stated that "[t]o be inadmissible under Rule 403 the [evidence] must be more than damaging on account of its probative force; it must encourage the jury to rely on improper considerations, such as emotion." *United States v. Stapleton*, 2013 U.S. Dist. LEXIS 160442, at *28-29 (E.D. Ky. Nov. 8, 2013)(Exhibit 4) *citing United States v. Johnson*, 581 F.3d 320, 327 (6th Cir. 2009); *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir. 1988)("unfair prejudice" defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

This is exactly the reason Henkel KGaA seeks to introduce evidence related to

Mr. Nona's FINRA matter—to unfairly persuade the jury to determine this matter by employing improper considerations such as emotion and/or other bias. Specifically, the crux of Henkel KGaA's motive behind introduction of evidence regarding the FINRA matter would be to wrongfully and unfairly suggest to the jury that because FINRA accused Mr. Nona of some form of dishonesty 6 years ago (allegations settled via the AWC) Mr. Nona somehow will be untruthful under oath at a trial on the merits of this case.

The Court should not permit this unfairly prejudicial evidence—<u>which has no probative value on the substantive facts and issues in this case</u>—to be presented.

Here, discussion at trial of the FINRA matter, which is based upon events that occurred 14 years ago, subject to a complaint that was filed 8 years ago, an AWC that was signed 6 years ago, and under circumstances where Mr. Nona has not been under any further disciplinary action will have the tendency to unfairly prejudice and confuse the jury as to the substantive issues in this matter.  It will certainly cause an unnecessary distraction at a trial of this matter—which should not be subjected to Henkel KGaA's prejudicial and retaliatory sideshow.

Under F.R.E. 403, the evidence's probative value is substantially outweighed by the danger of unfair prejudice and confusion and should be excluded by the Court.

### C. Evidence Related to the FINRA Matter is Inadmissible Pursuant to F.R.E. 404

Evidence regarding the FINRA matter does not go to "motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as required to be admissible pursuant to F.R.E. 404(b).  Furthermore, under a 404(b) challenge, the Court must consider: 1) whether there is sufficient evidence the prior act occurred; 2) whether there is a proper purpose for the evidence; and 3) whether the evidence is more prejudicial than probative. *Edgerson*, *supra*, at *4-7.   KCP does not dispute that Mr. Nona's FINRA action occurred, although in the AWC he neither admitted nor denied the underlying allegations.   Here, however, for the reasons already discussed, no proper purpose for the evidence exists because it is irrelevant pursuant to F.R.E. 401 and admissibility of the evidence is highly prejudicial pursuant to F.R.E. 403.

### D. Extrinsic Evidence Related to the FINRA Matter is Inadmissible Pursuant to F.R.E. 608

Henkel KGaA could conceivably attempt to use the AWC and the facts related to the alleged FINRA rules violation as a mechanism for impeaching Nona's credibility as a witness at trial under FRE 608.  Under this rule, while the Court has the discretion to permit the conduct to be inquired into on cross examination, it is contrary to the rule to permit Defendant to use extrinsic evidence, such as the AWC, to disprove any statement Mr. Nona may make in this respect.  F. R. E. 608(b); *Blake, supra*; *Brugnara, supra*.  Only opinion or reputation testimony on cross-examination—if probative of the character for truthfulness or untruthfulness of the witness may be used.  *Id.*   As with F.R.E. 403, and F.R.E. 404: "**the probative value of such**

evidence must still not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Battle supra,* R. 71-7; *Martin supra,* R. 71-8; *Stoecker*, *supra* 215 F3d 788.  Here, as discussed herein, there is an intrinsic danger of unfair prejudice, confusion of the issues, and misleading the jury should the Court permit Henkel KGaA to introduce evidence related to the FINRA matter.

## VI.   CONCLUSION

The details underlying Mr. Nona's FINRA matter cannot and do not provide a foundation for any defense to Henkel KGaA's own bad acts.   For the reasons discussed herein, Mr. Nona's prior conduct is irrelevant as to any substantive claim or defense, is prejudicial, and therefore, inadmissible under F.R.E. 401, F.R.E. 403, F.R.E. 404(b) and F.R.E.  608.  The only reason Henkel KGaA would possibly want to introduce such evidence is at best, to impeach and attack Mr. Nona's credibility, and at worst to harass and embarrass Mr. Nona, causing KCP unfair prejudice and confusion to the jury.   For all the foregoing reasons, the Court should grant KCP's motion in limine and exclude evidence related to Mr. Nona's FINRA matter.

Respectfully submitted,
KICKHAM HANLEY PLLC

*/s/ Jamie Warrow*
Jamie Warrow (P61521)
Attorneys for Knight Capital Partners
jwarrow@kickhamhanley.com

Dated: August 28, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filing Participants.

<u>/s/ Jamie Warrow</u>
Jamie Warrow

KH155898