UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KNIGHT CAPITAL PARTNERS CORP.,

       Plaintiff,                                          Case Number 16-12022
v.                                                         Honorable David M. Lawson

HENKEL AG & COMPANY, KGAA,

       Defendant.
_____/

## **ORDER DENYING MOTION FOR SANCTIONS**

On July 16, 2019, the Sixth Circuit Court of Appeals issued its opinion and judgment remanding the case to this Court for the limited purpose of conducting further proceedings on the plaintiff's motion for sanctions (ECF No. 93). The appellate panel remanded the case for consideration of that motion after it concluded that "[t]he sanctions motion . . . was not moot," because "[a]lthough the merits of KCP's claims were decided at that point, the sanctions motion was directed at a collateral issue," and "[d]istrict courts retain jurisdiction to consider collateral issues, such as motions for attorney's fees, even after entry of judgment on the merits." *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 787 (6th Cir. 2019).

The motion for sanctions fully was briefed before the Court issued its ruling on the merits, and the historical circumstances of the litigation pertinent to the motion have not been altered by the ensuing process of the appeal. Nevertheless, the Court permitted the parties to file limited supplemental briefing on the motion. The plaintiff's supplement merely reiterates the arguments advanced in its previously filed briefing. The defendant argues in its supplement that the relief sought in the motion now is moot. That position is a non-starter since the court of appeals held otherwise and remanded the case with the express direction for this Court to address the sanctions request on the merits. This Court is bound by the law of the case to proceed with adjudication of

the motion within the bounds of the mandate. *Medical Center at Elizabeth Place, LLC v. Atrium Health System*, 922 F.3d 713, 733-34 (6th Cir. 2019) (Sutton, J., concurring).

Proceeding to the merits of the request for sanctions, the Court now concludes that the motion must be denied because the plaintiff has failed to support its position that the "Attorney Eyes Only" (AEO) designation was grossly abused. The plaintiff's principal demand in its motion was for excess attorney's fees that it says it incurred when it was required to devote additional lawyer hours to reviewing designated materials that could not be viewed by the plaintiff's client representatives to determine how they might bear on the issues in the case. The plaintiff also demanded that the AEO designation be stricken from the defendant's entire document production, but it appears that there is no longer any live dispute over the need for that relief since the designation was withdrawn from the documents that the plaintiff specifically challenged as mis-designated. The Court also finds that any prejudice to the plaintiff due to the constrained document review during the period of heightened designation was cured by a substantial extension of the discovery and expert and dispositive motion deadlines to June 14, 2018, which afforded both sides more than four months to review the record, deliver documents to their experts, and prepare motions challenging their testimony, after the disputed designation had been removed from all of the documents at issue.

"[T]he Federal Rules of Civil Procedure provide that a district court may order a party to pay attorney's fees 'caused by' discovery misconduct, Rule 37(b)(2)(C), or 'directly resulting from' misrepresentations in pleadings, motions, and other papers, Rule 11(c)(4). And under 28 U.S.C. § 1927, a court may require an attorney who unreasonably multiplies proceedings to pay attorney's fees incurred 'because of' that misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 n.5 2017)). "Federal Rule of Civil Procedure 26(g) requires an attorney or

the party personally to certify that discovery responses and objections are supported by nonfrivolous argument and are not aimed to harass, cause delay, or drive up litigation costs. The rule requires a court to impose sanctions for any violation without 'substantial justification.'" *Jones v. Illinois Cent. R. Co.*, 617 F.3d 843, 854 (6th Cir. 2010) (quoting Fed. R. Civ. P. 26(g)). "Reasonable attorney's fees and expenses are available under Rule 16(f), Rule 26(g), Rule 37(b), and Rule 37(d)" for various species of discovery misconduct. *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 514 (N.D. Ohio 2013). Rule 37(b)(2)(C) authorizes the Court to award reasonable expenses, including attorney's fees, "caused by the failure" properly to respond to discovery requests, "'unless the failure was substantially justified or other circumstances make an award of expenses unjust.'"

"Federal courts [also] possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear*, 137 S. Ct. at 1186 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Ibid.* "[O]ne permissible sanction is an 'assessment of attorney's fees' . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Ibid.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). However, the Supreme Court "has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." *Ibid.* "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue. . . . Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link — between the litigant's misbehavior and legal fees paid by the opposing party." *Ibid.* Thus, "[t]he complaining party . . . may recover 'only the portion of

his fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).

In this case, the plaintiff has failed to establish that any gross abuse of the AEO designation by the defendant was the root cause of the substantial amount of excess fees that it seeks to recover, because it has not put forth sufficient evidence of obstinate, egregious conduct by the defendant or its counsel, and it has not established that any excess fees solely were incurred due to the defendant's abuse of the AEO label.

*First*, in its motion papers the plaintiff repeatedly but vaguely alludes to a gigantic production of nearly 25,000 pages of material under the AEO designation. But its calculations of the scope of the abuse are questionable because it made no effort to distinguish the materials produced by the defendant, against whom it asks the Court to impose sanctions, and those items produced by non-party Henkel US, against whom it sought no relief. Moreover, in the appendix submitted in support of the motion, the plaintiff identified only approximately 480 total pages, out of a production of more than 85,000 pages, which it specifically identified as misdesignated. That substantially reduced sample of the disputed production does not sustain the claim of gross abuse of the AEO designation. And some of the exhibits submitted bear no indication that they even were subjected to the AEO classification. The record certainly suggests that the defendant applied the AEO designation broadly in its initial production, but, even by the plaintiff's inflated and questionable estimate that 25,000 out of 85,000 pages initially were misdesignated, 30% of the total production is nowhere near the comprehensive whitewash evidenced in cases where sanctions were awarded based on "wholesale" abuse of confidentiality classifications. *E.g.*, *Brown v. Tellermate Holdings Ltd.*, No. 11-1122, 2014 WL 2987051, at *14 (S.D. Ohio July 1, 2014), *adopted as modified*, No. 2:11-CV-1122, 2015 WL 4742686 (S.D. Ohio Aug. 11, 2015)

("Tellermate marked almost all of the documents — by the Browns' estimate, *see* Defendant's Exhibit 19, over 99% of them — as 'Confidential-Attorneys' Eyes Only.'"); *In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 317 (D.D.C. 2006) ("ULLICO designated 'over 99% of the roughly 60,000 documents (200,000 pages)' as 'confidential.'"); *THK Am., Inc. v. NSK Co.*, 157 F.R.D. 637, 645 (N.D. Ill. 1993) ("[E]ven under the defendants' calculations at least 79% of the documents produced were designated as 'Attorney's Eyes Only.' This is absurdly high."). The plaintiff has failed to advance any sufficient record to support its allegations of a wholesale discovery whitewash by the defendant; merely pointing out that a large number of documents were designated for attorney eyes only, under the terms of a protective order which specifically permitted the AEO designation, does not suffice to establish bad faith conduct. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 286-87 (N.D. Tex. 2017) ("All Pro complains of the collateral effects of Samsung's AEO designations, but Samsung's making those designations — even as to all of these produced materials — does not itself establish that any particular confidentiality designation was improper. . . . [T]he Sanctions Motion does not actually show or — despite providing a few examples from a sampling of the produced materials — even really attempt to show or give the Court a basis to determine that — each particular document or recording or portion of the recordings is not properly designated as AEO.").

*Second*, there is no indication in the record that the defendant repeatedly defied orders of the Court or resisted reviewing and re-designating documents on multiple occasions when its designation was called seriously into question. Instead, the defendant represents, and the plaintiff does not dispute, that the defendant commenced a re-review and de-designation immediately after the Court suggested during a status conference that the defendant's understanding of the application of the AEO label was at odds with the Court's common sense reading of the protective

order.  *Cf. Broadspring, Inc. v. Congoo, LLC*, No. 13-1866 JMF, 2014 WL 4100615, at *22 (S.D.N.Y. Aug. 20, 2014) ("Defendants redesignated and re-produced documents on nine separate occasions — including, most notably, 780 documents that were re-designated only after evidence of some patently improper designations prompted the Court, on Plaintiff's application, to order Defendants to engage in a wholesale review of all documents it had designated AEO."); *THK*, 157 F.R.D. at 645 ("The record demonstrates that the defendants' abuse of the 'Attorney's Eyes Only' designation is not due to inadvertence or mistake. Rather, it is a deliberate attempt to avoid the consequences of the Magistrate Judge's August 20th Order and the District Judge's October 18th Order rejecting defendants' objections in this regard and affirming the Magistrate Judge's Order."). In this case the record does not demonstrate the level of repeated defiance of discovery rulings that has been found to support the issuance of sanctions.

*Third*, because the disputed designation already was withdrawn by the defendant from the documents in question, there is no longer any basis for the Court to order that the AEO designation be stricken from the defendant's entire document production. Moreover, the case has been dismissed on the merits and that dismissal was affirmed on appeal, so no purpose would be served by compelling any other or further production of any discovery materials.

The record here amply suggests that the defendant or its counsel has engaged in some sharp practice on questionable grounds, which accomplished little more than delaying the litigation and increasing the expense for both sides. The defendant also may have abused the AEO confidentiality designation, perhaps in a rush to complete its production after the Court resolved a lengthy initial discovery dispute and issued a protective order on its own terms. That abuse could have been motivated in part by an intent to frustrate and annoy the plaintiff. However, even if some colorable basis for awarding sanctions could be discerned, the Court does not find that the balance of equities

favors cost shifting under the circumstances, where the injury suffered by the plaintiff equally well can be attributed to a party heaping legal expenses on itself in pursuit of claims that it either knew, or ought to have known from nearly the outset of the litigation, were lacking in any plausible factual substance. Even if the defendant may be faulted to some degree for increasing the expense of the litigation, the Court does not find that any substantial justice would be done by shifting more of the cost to the defendant than it already has incurred by defending the case, where the plaintiff's entire legal bill was incurred in the first instance as the product of its determination to sustain and prolong the litigation of demonstrably groundless claims. Thus, even if the defendant's mislabeling of its production played some part in increasing the plaintiff's legal expense, any such misconduct may not properly be regarded as the "but for" cause of the fees.

Accordingly, it is **ORDERED** that the plaintiff's motion for sanctions (ECF No. 93) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: September 9, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 9, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI

---